# EXHIBIT A

DocuSign Envelope ID: 2547E5D7-D3D3-882D-4DC2-0E6369E1
World Business Lenders

## BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER: Landash Corporation**

**PRINCIPAL (including processing fees): $508,200.00**

**DATE: 1/5/2017**

**1. PROMISE TO PAY**: Landash Corporation ("Borrower"), with its principal place of business located at 885 Sternberger Rd, Jackson, Ohio, 45640, does hereby promise to pay to the order of **WORLD BUSINESS LENDERS, LLC** ("Lender") at its offices located at 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302, or at such other location or in such other manner as designated by Lender, the sum of **FIVE HUNDRED EIGHT THOUSAND TWO HUNDRED DOLLARS AND ZERO CENTS ($508,200.00)** ("Principal") plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3.

**2. INTEREST RATE**: The unpaid Principal shall bear interest at the rate of **0.315753424658%** per day until paid in full.

**3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS**: Borrower shall repay the Principal and interest commencing on **1/9/2017** and on each Business Day thereafter until **7/6/2017** with each daily payment equaling **$5,324.14**, followed by a final payment of **$5,323.04** on **7/7/2017**, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. **"Business Day" means any Monday through Friday, except Federal Reserve holidays.** The period commencing on **1/9/2017** and ending on **7/7/2017** is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Business Promissory Note and Security Agreement ("Loan Agreement").

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

**4. PREPAYMENT**: Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as required by applicable law). Any prepayment shall include a prepayment charge equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal. This prepayment charge is in addition to any interest calculated and accrued in accordance with Section 2 above. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall contact Lender at its address above in Section 1 or at 212-293-8200, and Lender shall provide Borrower with the amount necessary to prepay as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations have been accelerated on the happening of an Event of Default, payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4.

**5. RETURNED PAYMENT CHARGE**: Borrower will pay a charge of **thirty-five dollars ($35.00)** in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient

balance in the Designated Checking Account or otherwise.

**6. SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any prior loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds described as follows (if any): **NONE_**, ("Purchase Money Collateral") and also includes all personal property now owned or hereafter acquired by the Borrower (which, along with the Purchase Money Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral.

Borrower shall: maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend it against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit it to be used in violation of any applicable law, regulation or policy of insurance. Lender is authorized to examine the Collateral wherever located at any reasonable time or times and Borrower shall assist Lender in making any such inspection.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

**7. WARRANTIES:** Borrower warrants that:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and the following security interests of: NONE;

(b) the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods;

(c) the Collateral will be kept at Borrower's address set forth above in Section 1, or at the following address:

DocuSign Envelope ID: 2318-bk-50300-891-20-619E17
World Business Lenders

885 Sterberger Rd, Jackson, OH 45640

(d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

8. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement, or any other document or instrument given to Lender;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender, or (II) an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan

Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

**9. ATTORNEYS' FEES AND COLLECTION COSTS**: In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal.

**10. SALE OF LOAN AGREEMENT**: This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**11. INDEMNIFICATION**: Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**12. MISCELLANEOUS**:

(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) Borrower waives trial by jury with respect to any action arising out of or relating to this Loan Agreement.

(c) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(d) This Loan Agreement shall be governed by the laws of the State (or Commonwealth, as the case may be) of Borrower's address set forth above in Section 1 ("Borrower's State").

(e) Any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced in any state or federal court located in Borrower's State, and Borrower waives

DocuSign Envelope ID: 2B1FED07-2EB1-4893-892F-4FC4626B9E11
World Business Lenders

personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the federal law or the laws of Borrower's State. Borrower and Lender agree that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

(f)  Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(g)  Presentment, protest, demand and notice of dishonor are waived.

(h)  Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(i)  Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(j)  Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(k)  If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(l)  Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(m) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(n)  The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

DocuSign Envelope ID: ...003-89ce-4cc20-cb9E1
World Business Lenders

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

World Business Lenders

PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD
ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION,
AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY,
ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER
KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN
AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED
VERSION OF THIS LOAN AGREEMENT.

BORROWER: Landash Corporation

By: _____
Jason E Adkins

Printed Name: _____

Title: _____President_____

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
ACKNOWLEDGMENT OF SIGNATURE APPEARS ON THE FOLLOWING PAGE

World Business Lenders
WE LEND. YOU GROW.

# BUSINESS LOAN SUMMARY*

| **Borrower:** Landash Corporation | **Lender:** World Business Lenders, LLC |
|---|---|
| 885 Sternberger Rd, Jackson, Ohio, 45640 | 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302 |

| **Disbursement Amount:** |
|---|
| $484,675.86 |
| This amount is to be disbursed on 1/6/2017 |

| **Processing Fees:** |
|---|
| $8,200.00 |
| See Itemization on attached Page 2 |

| **Adjustments:** |
|---|
| $15,324.14 |
| See Itemization on attached Page 2 |

| **Loan Amount:** |
|---|
| $508,200.00 |
| See Itemization on attached Page 2 |

| **Interest Charge:** |
|---|
| $162,640.54 |
| See Itemization on attached Page 2 |

| **Total Repayment Amount:** |
|---|
| $670,840.54 |
| See Itemization on attached Page 2 |

**Payment Schedule:** 125 payments of **$5,324.14** due each "Business Day" commencing on **1/9/2017** until **7/6/2017**, followed by a final payment of **$5,323.04** on **7/7/2017** when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. **"Business Day" means any Monday through Friday, except Federal Reserve holidays.** The period commencing on **1/9/2017** and ending on **7/7/2017** is referred to as the "Repayment Period."

**Prepayment:** Borrower may make a full prepayment of unpaid Principal at any time accompanied by a prepayment premium. The prepayment premium will be equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of (i) the aggregate amount of any payments made by Borrower to Lender prior to the date of such prepayment and (ii) the amount of the unpaid Principal.

**Charges:** Returned (NSF/ACH) Payment Charge: $35.00.

*If there is any conflict between the terms of this Business Loan Summary and the related Business Promissory Note and Security Agreement entered into by Borrower, the terms of the Business Promissory Note and Security Agreement shall govern.

Borrower hereby acknowledge(s) reading and understanding all of the information disclosed above, and receiving a completed copy of this Business Loan Summary on the date indicated below.
Read, acknowledged and accepted This Day ____ 01 of Month ____ of Year 2017 _____.

**BORROWER: Landash Corporation**

DocuSigned by:

By: _Jason Adkins_____ Printed Name: ___Jason E Adkins____ Title: _____President_____
5DBE2966810E43C...

*Rev. June 2015 (5day)*    WBL Initials _____ Date _____    Page | 1

DocuSign Envelope ID: E67EDC7-2B21-4393-882F-47C3EE899E77

## BUSINESS LOAN SUMMARY ITEMIZATION

| FEES | Description | Net Out | Capitalize |
|------|-------------|---------|------------|
| Processing Fee | Fee for loan processing | $0.00 | $795.00 |
| Notary Fee | Fee for notary to witness mortgage signing | $0.00 | $0.00 |
| Courier & Wire | Fee to deliver documents and wire fund | $0.00 | $0.00 |
| Settlement Fee | Fee for settlement or closing fee | $0.00 | $0.00 |
| Title Exam Fee | Fee for title examination | $0.00 | $0.00 |
| Business Inspection | Fee for inspection of business | $0.00 | $0.00 |
| Estimated Title Fee | Estimate of Title Fees | $0.00 | $7,500.00 |
| Residential Title Insurance | Fee for residential property insurance | $0.00 | $0.00 |
| Commercial Title Search | Fee for commercial property lien search report(s) | $0.00 | $0.00 |
| Commercial Title Insurance | Fee for commercial property insurance | $0.00 | $0.00 |
| Closing Protection Letter | Fee for Closing Protection Letter | $0.00 | $0.00 |
| Recording Fee | Fee for title agency to record mortgage(s) | $0.00 | $0.00 |
| Endorsement | Fee for change(s) in title insurance coverage | $0.00 | $0.00 |
| Mortgage State Tax Stamps | Fee for state tax stamps | $0.00 | $0.00 |
| Tax Certification | Fee for confirming if property tax is current | $0.00 | $0.00 |
| Certificate of Good Standing | Fee for Certificate of Good Standing | $0.00 | $0.00 |
| Broker Price Opinion Fee | Fee for evaluating the property | $0.00 | $300.00 |
| Prepaid Fees | Borrower prepaid fee credit | ($0.00) | ($590.00) |
| Abstract Search | Abstract Residential Title Search | | $195.00 |
| | | | |
| | | | |
| | | $0.00 | |
| | **TOTAL FEES** | **$8,200.00** | |
| **ADJUSTMENTS** | | | |
| Principal Balance (Refi Only) | Unpaid principal balance on previous loan | $0.00 | |
| Remaining Interest (Refi Only) | Unpaid interest due on previous loan | $0.00 | |
| Interest Due | Current daily interest charge | $0.00 | |
| Funds Held in Escrow | Amount in escrow to be released upon satisfaction of escrow condition(s) | $0.00 | |
| Third Party 1 Payoff | | $0.00 | |
| Third Party 2 Payoff | | $0.00 | |
| Third Party 3 Payoff | | $0.00 | |
| Third Party 4 Payoff | | $0.00 | |
| Tax Payoff | Estimated Property Tax | $10,000.00 | |
| Payment Holdback | Holdback of 1 Daily payment | $5,324.14 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | **TOTAL ADJUSTMENTS** | **$15,324.14** | |
| **BEGINNING PRINCIPAL** | | | |
| Loan Amount Before Fees & Costs | | $500,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $8,200.00 | |
| | **TOTAL BEGINNING PRINCIPAL** | **$508,200.00** | |
| **DISBURSEMENT AMOUNT** | | | |
| Loan Amount Before Fees & Costs | | $500,000.00 | |
| Total Fees (Only if net out) | Sum of above itemized fees | $0.00 | |
| Total Adjustments | Sum of above itemized adjustments | $15,324.14 | |
| | **TOTAL DISBURSEMENT** | **$484,675.86** | |
| **INTEREST CHARGES** | | | |
| Interest Charges | Total interest to be paid over the term of the loan | $162,640.54 | |
| | **TOTAL INTEREST CHARGES** | **$162,640.54** | |
| **TOTAL REPAYMENT** | | | |
| Loan Amount Before Fees & Costs | | $500,000.00 | |
| Total Fees (only if capitalized) | Sum of above itemized fees | $8,200.00 | |
| Interest Charges | Total interest to be paid over the term of the loan | $162,640.54 | |
| | **TOTAL REPAYMENT** | **$670,840.54** | |

*Rev. June 2015 (5day)*      WBL Initials _____ Date _____

DocuSign Envelope ID: E4F7EB67-2B24-4593-8921-4F63DE499E77
World Business Lenders

**BUSINESS LOAN AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

**Date: 01-05-2017**

**DISBURSEMENT OF BUSINESS LOAN PROCEEDS.** By signing below, Borrower authorizes Lender to disburse the business loan proceeds, as evidenced by the Business Promissory Note and Security Agreement executed by Borrower of even date herewith, less the amount of any applicable fees, (a) by issuing (i) a check to Borrower or (ii) a check or bank wire to Borrower's checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the "Designated Checking Account") or (b) by initiating an ACH credit entry to the Designated Checking Account. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for approval of the business loan. By signing below, Borrower agrees to enroll in the Automatic Payment Plan and authorizes Lender to collect payments required under the terms of the Business Promissory Note and Security Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the Payment Schedule set forth in the Business Promissory Note and Security Agreement. Borrower authorizes Lender to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the Payment Schedule and any unpaid charges. This authorization is to remain in full force and effect until the loan is paid in full or until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's Designated Checking Account in good standing or if there are insufficient funds in Borrower's Designated Checking Account to process any payment. If Borrower terminates this authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment method prescribed by Lender.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established by Borrower, and the loan proceeds will be used for business purposes only and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender promptly if there are any changes to the Designated Checking Account, including routing numbers.

**MISCELLANEOUS.** Lender is not responsible for any fees charged by Borrower's depository bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH transactions to Borrower's Designated Checking Account must comply with the provisions of U.S. law.

**Depository Bank Name:** Bank of America
**Branch:** Tampa, FL
**Branch Address:** PO Box 25118, Tampa, FL 33622
**Account Name:** Landash Corporation
**Account #:** 488045541557
**Routing #:** 111000025
**Customer Federal Tax ID (EIN):** 47-1038053

BORROWER: Landash Corporation

Signature: _____  Name/Title: _____  Jason E Adkins    President

Date: 1/5/2017 _____

World Business Lenders

BUSINESS LOAN PURPOSE AFFIDAVIT

Date: 1/5/2017

## AFFIDAVIT

STATE/COMMONWEALTH OF Ohio )

                              ) ss.

COUNTY OF _____           )

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith ("Loan Agreement"), Borrower being first duly sworn on oath deposes and states:

That the proceeds of the Loan Agreement of FIVE HUNDRED EIGHT THOUSAND TWO HUNDRED DOLLARS AND ZERO CENTS ($508,200.00), being furnished to Borrower will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods.

Subscribed and sworn to by Borrower, under penalty of perjury, this _____ day of _____, in the year _____.

BORROWER: Landash Corporation

By: _____
             Jason E Adkins
Printed Name: _____

Title: _____President_____

Subscribed and sworn to me this ____ day of _____, in the _____.

_____
Notary Public
My commission expires:

# EXHIBIT   B

DocuSign Envelope ID: E877EDC7-2B21-4393-892F-47C8CE699E41
World Business Lenders

**CONTINUING GUARANTY (Unlimited)**     Dated: 1/5/2017

**GUARANTY.** For value received, and to induce WORLD BUSINESS LENDERS, LLC ("Lender"), with offices at 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302, to extend credit or grant or continue other credit accommodations to Landash Corporation ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor. This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of surety ship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender or its agents to obtain information concerning Guarantor's financial condition, including credit reports. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender. **This Guaranty includes additional provisions on the next page.**

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

DocuSign Envelope ID: 2E8F8-0K-593003-883A-0C2CE899E1F...
World Business Lenders

---

### NOTICE TO GUARANTOR

You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.

---

(Guarantor Name) Jason E Adkins

(Guarantor Signature) _____

885 sternberger road Jackson Ohio 45640
(Guarantor Address)

(Guarantor Name) Rebekah Holdings LLC

(Guarantor Signature) _____

885 sternberger road Jackson Ohio 45640
(Guarantor Address)

---

**For Married Residents Only:** Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X _____                    X _____

---

Acknowledgement to signature(s) on following pages.

## ADDITIONAL PROVISIONS

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. **Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**INTERPRETATION.** The validity, construction and enforcement of this Guaranty are governed by the laws of the State/Commonwealth of Ohio without regard to its conflicts of laws rules. All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code. Invalidity or unenforceability of any provision of this Guaranty shall not affect the validity or enforceability of any other provision.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be in any court of the State/Commonwealth of Ohio or in the United States District Courts sitting in Ohio, and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State/Commonwealth of Ohio or the United States of America. Guarantor agrees that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

**ARBITRATION.**

Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

DocuSign Envelope ID: ...93-8...0C/2...E-1...99E

World Business Lenders

## JURY WAIVER

**GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.**

**Guarantor** Jason E Adkins        **Guarantor** Rebekah Holdings LLC

DocuSigned by:

*Jason Adkins*

5DBE29666I0E43C...

DocuSigned by:

*Rebekah Adkins*

061A57068A1649F...

Acknowledgement to signature(s) on following pages.

# EXHIBIT  C

Instrument          Book Page
201700000266 OR    122 1426

201700000266
Filed for Record in
JACKSON COUNTY, OHIO
ROSE WALTERS, RECORDER
01-27-2017 At 12:47 pm.
MORTGAGE          104.00
OR Book    122 Page 1426 - 1434

**RECORDATION REQUESTED BY:**

World Business Lenders, LLC

**WHEN RECORDED MAIL TO:**

World Business Lenders, LLC
101 Hudson Street, 33rd Floor
Jersey City, NJ 07302

World Wide Land Transfer
Eight Neshaminy Interplex
Suite 117
Trevose, PA 19053

201700000266
WORLD WIDE LAND TRANSFER
8 NESHAMINY INTERPLEX OR
STE 117
FEASTERVILLE TREV PA 19053

**SEND TAX NOTICES TO:**

World Business Lenders, LLC
101 Hudson Street, 33rd Floor
Jersey City, NJ 07302

FOR RECORDER'S USE ONLY

# MORTGAGE

THIS MORTGAGE IS DATED January 06, 2017 BETWEEN Rebekah Holdings LLC, a Delaware Limited Liability Company whose address is 885 Sternberger Road, Jackson, OH 45640 (sometimes below will be called "Owner," "I" or "me"); and World Business Lenders LLC, whose address is 101 Hudson Street, 33rd Floor Jersey City, NJ 07302 (sometimes below will be called "Lender").

OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY. I mortgage, grant and convey to Lender the Property, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if Borrower or I fail to do any of the following:

(A) Pay all the amounts that Borrower and I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

DESCRIPTION OF THE PROPERTY. I mortgage, grant and convey to Lender the Property described in (A) through (I) below.

(A) This Property is located in Jackson County, State of Ohio:

See Exhibit A, which is attached to this Security Instrument and made a part of this Security Instrument as if fully set forth herein.

The Real Property or its address is commonly known as 885 Sternberger Road, Jackson, OH 45640.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"

(D) All rents and royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future; and

(I) All replacements of or additions to the Property described in subparagraphs (B) through (I) of this section.

OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY. I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

Ohio – Mortgage – Residential – Guarantor                    1 of 8

Instrument
201700000266 OR

Book Page
122 1427

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT.**  My promises and agreements in this Mortgage are stated in "plain language."

**OWNER'S WAIVERS.**  I waive all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against me, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**OWNER'S REPRESENTATIONS AND WARRANTIES.**  I warrant to Lender that: (A) this Security Instrument is executed at the request of Borrower and not at the request of Lender; (B) I have the full power and right to enter into this Security Instrument and to mortgage the Property; (C) I have established adequate means of obtaining information from Lender on a continuing basis information about the financial condition of Lender; and (D) Lender has made no representation to me about Borrower or Borrower's creditworthiness.

**THIS MORTGAGE IS GIVEN TO SECURE (A) PAYMENT OF THE SUMS SECURED AND (B) PERFORMANCE OF ALL OF MY OBLIGATIONS UNDER THIS MORTGAGE.**

UNIFORM COVENANTS

**I PROMISE AND I AGREE WITH LENDER AS FOLLOWS:**

**BORROWER'S PROMISE TO PAY.**  This Security Instrument directly secures payment by Borrower to Lender on time of all principal and interest due under the Note.

**OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS.**  I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.  I will do this by making the payments on time to the person owed them.  (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.)  If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien."  I must promptly pay or satisfy a superior lien unless: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security instrument is superior to the lien held by that person.  If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien.  I will then pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.**  I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property.  The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage.  The insurance must be in the amounts and for the periods of time required by Lender.  If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender.  I agree to maintain such insurance for the term of the loan.  In no event, however, shall I be required to provide hazard insurance in excess of the replacement value of the buildings and other improvements on the Property.  I may choose the insurance company, but my choice is subject to Lender's approval.  Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgagee clause" to protect Lender.  The form of all policies and renewals must be acceptable to Lender.  Lender will have the right to hold the policies and renewals.  If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender.  If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds."  The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose.  If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that is owed to Lender under the Note and under this Security Instrument.  If any of the proceeds remain after the amount that is owed to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds.  Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured.  The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Note, that use will not delay the due date or change the amount of any of the regularly scheduled payments under the Note.  However, Borrower and Lender may agree in writing to those delays or changes.

Instrument          Book Page
201700000266 OR      122 1428

If Lender acquires the Property as provided below, all of my rights in the insurance policies will belong to Lender.  Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender.  However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY.**  I will keep the Property in good repair.  I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

**HAZARDOUS SUBSTANCES.**  I promise that the Property never has been and never will be used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous substance, hazardous waste, or hazardous matter, as those terms are used in any federal or state law governing any such use ("Hazardous Matter Laws").  I promise to protect Lender and the Property from any loss under any Hazardous Matter Law.  I promise to pay Lender any losses or costs Lender may incur because of Hazardous Matter Laws applying to the Property or its use or condition.  This promise will continue to be effective even after the Mortgage is paid in full and discharged.

**LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE.**  If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Lender must give me notice before Lender may take any of these actions.  Although Lender may take action under this Paragraph, Lender does not have to do so.

To the extent permitted by law, I will owe Lender any amounts, with interest, which Lender spends under this Paragraph.  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so.  I will also pay interest on those amounts at the Note rate.  Interest on each amount will begin on the date that the amount is spent by Lender.  However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.  This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If Lender required mortgage insurance as a condition for my loan, I will pay the premiums for that mortgage insurance.  I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**POSSESSION AND USE.**  Until in default, I may remain in possession and control of and operate and manage the Property.

**LENDER'S RIGHT TO INSPECT THE PROPERTY.**  Lender, and others authorized by Lender, may enter on and inspect the Property.  They must do so in a reasonable manner and at reasonable times.  Before, or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY.**  A taking of property by any governmental authority by eminent domain is known as "condemnation."  I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation.  All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured.  If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.  Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking.  The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds.  Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured.  The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Note, that use will not delay the due date or change the amount of any of the regularly scheduled payments under the Note.  However, Lender and I may agree in writing to those delays or changes.

**CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS.**

**Owner's Obligations.**  Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the regularly scheduled payments of principal and interest due under the Note or under this Security Instrument.  Even if Lender does this, however, that person and Borrower will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow delays or changes for a person who takes over my rights and obligations, even if Lender is not requested to do so.  Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

**Lender's Rights.**  Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future.  Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right to demand immediate payment in full of the amounts that are owed to Lender under the Note or under this Security Instrument.

**OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS.**  Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and

Instrument
201700000266 OR    Book Page
122 1429

agreements made in this Security Instrument.   Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Owner, each of us is fully obligated to keep all of Owner's promises and obligations contained in this Security Instrument.   Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.   This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Owners to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

**LOAN CHARGES.**  If the Note secured by this Security Instrument is subject to a law which sets maximum Note charges, and that law is finally interpreted so that the interest or other Note charges collected or to be collected in connection with the Note exceed permitted limits: (A) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.   Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.   If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**LEGISLATION AFFECTING LENDER'S RIGHTS.**  If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument as that phrase is defined above.   If Lender requires immediate payment in full under this Paragraph, Lender will take the steps and may act as specified below.

**NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT.**  Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class, certified or registered mail unless applicable law requires use of another method.   The notice will be addressed to me at the address shown at the beginning of this Security Instrument.   A notice will be given to me at a different address if I give Lender notice of my different address.   Any notice that must be given to Lender under this Security Instrument will be given by mailing it to the Lender's address shown at the beginning of this Security Instrument.   A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address.   A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph or of applicable law.

**LAW THAT GOVERNS THIS SECURITY INSTRUMENT.**  The creation, perfection, priority and enforcement of the security interest created pursuant to this Mortgage shall be governed by, and construed and interpreted in accordance with, the laws of the State of Ohio ("Property Jurisdiction") without regard to the conflict of laws provisions of the Property Jurisdiction.   The provisions of this Mortgage relating to the obligations secured hereby or to any agreement, instrument or document giving rise to the obligations secured hereby shall be governed by and construed and interpreted in accordance with, the governing law of the Note.   Nothing in this Mortgage shall be construed or interpreted to provide that any other agreement, instrument or document shall be governed by the laws of the Property Jurisdiction.   Owner (a) agrees that any suit, action or proceeding arising out of or relating to this Mortgage may be brought in a state court of record or a federal court of record in the county of Jackson, Ohio, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, (c) waives any objection to the laying of venue of any such suit, action or proceeding in any such court, (d) waives any claim that any such suit, action or proceeding has been brought in an inconvenient forum, (e) waives any other venue to which it might be entitled for any such suit, action or proceeding by virtue of citizenship, domicile, habitual residence or otherwise, (f) consents to the service of any process in any such suit, action or proceeding at its address provided herein, and (g) agrees that nothing in this Mortgage waives the Lender's choice of venue under any other agreement, instrument or document. Nothing in this Mortgage shall prevent Lender from bringing any suit, action or proceeding, enforcing any award or judgment, or exercising any right or remedy against Borrower, or against any security or collateral for the obligations of Borrower to Lender, within any other county or state, or any other foreign or domestic jurisdiction.

**CHOICE OF VENUE.**  If there is a lawsuit, I agree upon Lender's request to appear in the courts of the State of Ohio, in the county in which Borrower's following address is located: Jackson County, Ohio.

**OWNER'S COPY.**  I will be given one conformed copy of the Note and of this Security Instrument.

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED.**  Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.   Lender also may require immediate payment in full if a beneficial interest in Owner is sold or transferred and Owner is not a natural person.   However, Lender will not require immediate payment in full if this is prohibited by federal law as of the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph, Lender will give me a notice which states this requirement.   The notice will give me at least thirty (30) days to make the required payment.   The 30-day period will begin on the date the notice is mailed or delivered.   If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**OWNER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED.**  Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued.   I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

Borrower or I pay to Lender the full amount that would have been due under this Security Instrument and the Note if Lender had not required immediate payment in full; and

Borrower or I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

Instrument                    Book Page
201700000266 OR        122 1430

Borrower or I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, attorneys' fees; and

Borrower or I do whatever Lender reasonably requires to assure that Lender's rights in the Property are secure. Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If all of the conditions in this Paragraph are fulfilled, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under the Paragraph titled "LEGISLATION AFFECTING LENDER'S RIGHTS" or the paragraph titled "AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED" above.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**LENDER'S RIGHTS UPON DEFAULT.** If I am in default under this Security Instrument, this is what Lender may do, in addition to any other rights or remedies provided by law:

**Accelerate Payment.** Lender may require that Borrower pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all the conditions stated in subparagraphs (1), (2) and (3) of this Paragraph are met, Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

Lender may also require immediate payment in full if any of the events described in the Paragraph titled "LEGISLATION AFFECTING LENDER'S RIGHTS" or in the Paragraph titled "AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED" occur, even if the conditions stated in subparagraphs (1), (2) and (3) below are not met.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under this paragraph only if all of the following conditions are met:

(1) I fail to keep any promise or agreement made in this Security Instrument, including the promise to pay when due the Sums Secured.

(2) Lender sends to me, at least 35 days before demanding immediate payment in full or otherwise enforcing this Security Instrument, a notice that states: (a) The promise or agreement that I failed to keep; (b) The action that I must take to correct that default; (c) My right to cure the default by full payment of all amounts that are due under the Note and under this Security Instrument, including reasonable interest and late charges specified in the Note or this Security Instrument, as well as reasonable attorney fees; (d) An itemization of all past due amounts causing the loan to be in default; (e) An itemization of any other charges that must be paid in order to cure the default; (f) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another Person may acquire the Property by means of foreclosure and sale; (g) That if I meet the conditions stated in the Paragraph titled "OWNER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED" above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; (h) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and (i) Such other matter as is required by Ohio law; and

(3) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**Lender's Rights to Rental Payments and to Take Possession of the Property.** If Lender requires immediate payment in full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (1) collect the rental payments, including overdue rental payments, directly from the tenants; (2) enter on and take possession of the Property; (3) manage the Property; and (4) sign, cancel and change leases. If Lender notifies the tenants that Lender has the right to collect rental payment Lender has the right to collect rental payment directly from them under this Paragraph, I agree that the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Security Instrument. All rental payments collected by Lender or by a receiver, other than any rent paid by me, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, attorneys' fees, and the cost of any necessary bonds.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing my interest in all or any part of the Property.

**My Payment of Rent.** If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

**Payment During Foreclosure.** I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and has begun foreclosure and sale proceedings. Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of my obligations under this Security Instrument, after my failure to do so, that decision by Lender will not affect Lender's right to declare me in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Security Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses that Lender incurs, including attorneys' fees, which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Sums Secured.

**LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Instrument:

**Amendments.** Any alteration or amendment of this Security Instrument shall be in writing.

**Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Time is of the Essence.** Time is of the essence in the performance of this Security Instrument. This means that all deadlines for performance provided under this Security Instrument must be strictly complied with and that failure to do so will result in a default.

**Waivers and Consents.** Lender shall not waive any rights under this Security Instrument unless the waiver is in writing and signed by Lender. A waiver of any one right will not affect Lender's other rights. Lender will not lose or affect its rights if it delays in enforcing them.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means Landash Corporation and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Guarantor.** The word "Guarantor" means Jason E Adkins and Rebekah Holdings LLC.

**Guaranty.** The word "Guaranty" means the Continuing Guaranty (Unlimited) from Grantor to Lender dated January 05, 2017.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means World Business Lenders, LLC, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the Business Promissory Note and Security Agreement dated December 27, 2016, in the original principal amount of $508,200.00 from Borrower to Lender, together with all renewals, extensions, modifications, refinancings, consolidations, and substitutions thereof. The interest rate on the Note is 0.315753424658% per day. The Note is payable commencing on January 9,2017 and on each Business Day thereafter until July 07, 2017 with each daily payment equaling $5,324.14 followed by a final payment of $5,323.04 on July 07, 2017 when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. The maturity date of the Note is July 07, 2017.

Instrument       Book Page
201700000266 OR   122 1432

**Owner.**  Rebekah Holding LLC, a Delaware limited liability company sometimes will be called "Owner" and sometimes simply "I" or "me."  If I sign this Security Instrument, but I do not sign the Note, I am signing this Security Instrument only to grant and convey my interest in the Property to Lender.  In such a case, I will not be personally liable under the Note except as otherwise provided by contract or law, such as a guaranty of the Note.

**Personal Property.**  The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.**  The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.**  The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, any other guaranties including the Guaranty, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**  The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Instrument.**  This mortgage document will also be called the "Security Instrument."

**Sums Secured.**  The amounts described below in the section titled "OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY" sometimes will be called the "Sums Secured."

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK. SIGNATURE PAGE TO FOLLOW]

I ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS SECURITY INSTRUMENT, AND I
AGREE TO ITS TERMS.

OWNER: Rebekah Holding LLC, a Delaware Limited Liability Company

X _Rachel A Adkins_ Member

By: Rebekah A Adkins, Member

---

### CORPORATE ACKNOWLEDGMENT

STATE OF OHIO

COUNTY OF _Jackson_

The foregoing instrument was acknowledged before me this _Jan 6 2017_ (date) by
_Rebekah A Adkins, Member_ (name of officer or agent, title of officer or agent)
of _Rebekah Holdings LLC_ (name of corporation acknowledging) a
_Delaware Limited Liability_ (state or place of incorporation) corporation, on
behalf of the corporation.

_____

Notary Public

Printed Name: _Yolanda L Collins_

My Commission Expires:

_2.14.20_

YOLANDA L. COLLIER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 02-14-2020

Instrument
201700000266 OR
Book Page
122 1434

### Exhibit A
### Legal Description

ALL The real property situated in the Township of Franklin, County of Jackson and State of Ohio: Being the east half of the northeast quarter of Section 26, Township 6, Range 18, containing 77 acres, more or less.

Commonly Known as 885 Sternberger Road, Jackson, OH 45640.

# EXHIBIT D

Requested By: ccc 10/02/2017

```
                          Instrument      Book Page
                    201700002662 OR       126 2014
                    201700002662
                    Filed for Record in
                    JACKSON COUNTY, OHIO
                    ROSE WALTERS, RECORDER
                    08-21-2017 At 03:59 pm.
                    QUIT C DEED          28.00
                    OR Book       126 Page 2014 - 2015
```

```
        TRANSFERRED
TRANSFER FEE
    CONVEYANCE EXAMINED
  SEC. 319-202 R.C. COMPLIED WITH

        AUG 2 1 2017

AMT
        CLYDE R. HOLDREN
        JACKSON COUNTY AUDITOR
```

```
201700002662
885 STERNBERGER ROAD LLC
148 BEACH NINTH STREET
STE 2D
FAR ROCKAWAY NY 11691
```

## QUITCLAIM DEED

THIS QUITCLAIM DEED, executed this 18th day of July 2017, by first party, Investments Holding Inc. whose post office address is 148 Beach Ninth Street, Suite 2D, Far Rockaway, NY 11691 to second party, 885 STERNBERGER ROAD LLC, whose post office address is 148 Beach Ninth Street, Suite 2D, Far Rockaway, NY 11691.

WITNESSETH, that the said first party, for good consideration and for the sum of $10 paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of Jackson, State of Ohio, to wit:

885 Sternberger Rd, Jackson OHIO (Part of Section 26 in Franklin Township) Being in the east half of the northeast quarter of Section 26, Township 6, Range 18, containing 77 acres, more or less.

Parcel No: C05-006-00-060-00

IN WITNESS WHEREOF, the said first party has signed and sealed these presents the day and year first above written.

Investments Holding Inc

Grantor's Signature _____

Joseph Fulda, Vice President

Requested By: ccc 10/02/2017

Instrument          Book Page
201700002662 OR     126 2015

STATE OF NEW YORK            }

COUNTY OF QUEENS            }

The foregoing was acknowledged before me on this __31__ day of July, 2017 by Joseph Fulda,
as Vice-President of Investments Holding, Inc. The above-named person is personally known to
me or has produced _NYDL # 923017336_ as identification. If no type of identification is
indicated, the above-named person is personally known to me.

(Notary Seal)

_____
Signature of Notary Public

_Naftali  Solomon_
Print Name of Notary Public

I am a Notary Public of the State of New York, and my commission expires on
_____1/13/1Y_____.

This Instrument Prepared by:

Joseph Fulda
148 Beach Ninth Street, Suite 2D
Far Rockaway, NY 11691

Notary Public, State of New York
Qualified in Kings County
Naftali Solomon - Lic #01SO4900819
Commission Expires 1/13/20 1Y

2

# EXHIBIT    E

Instrument        Book Page
201700001154 OR    124   66

201700001154
Filed for Record in
JACKSON COUNTY, OHIO
ROSE WALTERS, RECORDER
04-18-2017 At 03:54 pm.
ASSGN MTG         32.00
OR Book    124 Page   66 -   67

201700001154
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE CA 91209-9071

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE,CA
91209-9071
Phone #: 800-331-3282

## ASSIGNMENT OF MORTGAGE



FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **WBL SPO I, LLC**, Assignee whose current mailing address is **101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302** all rights, title and interest in and to that Mortgage dated **01/06/2017** executed by **Rebekah Holdings LLC, a Delaware Limited Liability Company** to **World Business Lenders, LLC** and recorded as: **Instrument No: 201700000266  Volume: 122 Page: 1426** on **01/27/2017** of Official Records in the County Recorder's office of **Jackson** County, Ohio, describing land therein as:

Description/Additional information:
**ALL The real property situated in the Township of Franklin, County of Jackson and State of Ohio: Being the east half of the northeast quarter of Section 26, Township 6, Range 18, containing 77 acres, more or less.**
Commonly known as: 885 Sternberger Road, Jackson, OH 45640

**Loan Amount: $508,200.00**
**Current Beneficiary: World Business Lenders, LLC** whose address is: **101 Hudson Street, 33rd Floor, Jersey City, NJ, 07302**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon and with interest, and all rights accrued or to accrue under said Mortgage.

**World Business Lenders, LLC**
(Assignor)
I certify that this is an original document 04/05/2017

By: Alex Nadler
Its: Vice President

Instrument
201700001154 OR

Book Page
124    67

STATE OF **NEW JERSEY, HUDSON COUNTY**

On **April 05, 2017** before me, the undersigned, a notary public in and for said state,
personally appeared **Alex Nadler, Vice President** of **World Business Lenders, LLC**
personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me
that he/she executed the same in his/her capacity, and that by his/her signature on the
instrument, the individual, or the person upon behalf of which the individual acted,
executed the instrument.

Notary Public **Seth A. Notes**

Commission Expires: 07/15/2021
Acting in the County of Hudson County

This instrument was prepared by:
**World Business Lenders, LLC FAN FAN**
**101 Hudson Street, 33rd Floor**
**Jersey City, NJ 07302**

SETH A. NOTES
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50041976
My Commission Expires 7/15/2021

# EXHIBIT F



02/06/2018

Account ID:  21727
Landash Corporation
885 Sternberger Road
Jackson, OH 45640

As of 02/06/2018 the payoff amount for Account 21727 is as follows:

|  | 2/7/2018 | 1/21/2018 |
|---|---|---|
| Principal | $388,222.36 | $388,222.36 |
| Interest | $405,748.20 | $384,909.09 |
| NSF Fees | $595.00 | $595.00 |
| Prepayment Penalty | $69,547.58 | $69,547.58 |
| Collection Fees | $1,494.50 | $1,494.50 |
| Total Due | $865,607.64 | $844,768.53 |
| Daily Accrual | $1,225.83 | |



WE LEND, YOU GROW.

ACCOUNT NO:  21727
STATEMENT DATE:  2/12/2018

**Landash Corporation**
885 Sternberger Road
Jackson, OH 45640

STATEMENT PERIOD
1/6/2017   To  2/12/2018

## LOAN TERMS AND BALANCES

| | | | |
|---|---|---|---|
| MATURITY: | 7/7/2017 | PRINCIPAL BALANCE: | $388,222.36 |
| NEXT PAYMENT: | 2/13/2018 | PRINCIPAL PAID: | $119,977.64 |
| REGULAR PAYMENT: | $5,324.14 | INTEREST PAID: | $93,092.96 |
| PAYMENT: | Daily | TOTAL PAID: | $213,070.60 |
| DAILY APR: | 0.3157534247% | UNPAID NSF FEES: | $595.00 |
| | | UNPAID PENALTY: | $0.00 |

## LOAN ACTIVITY

| EFFECTIVE DATE | REFERENCE | TOTAL RECEIVED | INTEREST | DISTRIBUTION PRINCIPAL | NSF | OTHER | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 1/6/2017 | New Loan Draw | ($508,200.00) | $0.00 | ($508,200.00) | $0.00 | $0.00 | $508,200.00 |
| 1/6/2017 | New Loan RC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $508,200.00 |
| 1/9/2017 | Loan Payment | $5,324.14 | $4,813.98 | $510.16 | $0.00 | $0.00 | $507,689.84 |
| 1/10/2017 | Loan Payment | $5,324.14 | $1,603.05 | $3,721.09 | $0.00 | $0.00 | $503,968.75 |
| 1/11/2017 | Loan Payment | $5,324.14 | $1,591.30 | $3,732.84 | $0.00 | $0.00 | $500,235.91 |
| 1/12/2017 | Loan Payment | $5,324.14 | $1,579.51 | $3,744.63 | $0.00 | $0.00 | $496,491.28 |
| 1/13/2017 | Loan Payment | $5,324.14 | $1,567.69 | $3,756.45 | $0.00 | $0.00 | $492,734.83 |
| 1/17/2017 | Loan Payment | $5,324.14 | $5,324.14 | $0.00 | $0.00 | $0.00 | $492,734.83 |
| 1/18/2017 | Loan Payment | $5,324.14 | $2,455.00 | $2,869.14 | $0.00 | $0.00 | $489,865.69 |
| 1/19/2017 | Loan Payment | $5,324.14 | $1,546.77 | $3,777.37 | $0.00 | $0.00 | $486,088.32 |
| 1/20/2017 | Loan Payment | $5,324.14 | $1,534.84 | $3,789.30 | $0.00 | $0.00 | $482,299.02 |
| 1/23/2017 | Loan Payment | $5,324.14 | $4,568.63 | $755.51 | $0.00 | $0.00 | $481,543.51 |
| 1/24/2017 | Loan Payment | $5,324.14 | $1,520.49 | $3,803.65 | $0.00 | $0.00 | $477,739.86 |
| 1/25/2017 | Loan Payment | $5,324.14 | $1,508.48 | $3,815.66 | $0.00 | $0.00 | $473,924.20 |
| 1/26/2017 | Loan Payment | $5,324.14 | $1,496.43 | $3,827.71 | $0.00 | $0.00 | $470,096.49 |
| 1/27/2017 | Loan Payment | $5,324.14 | $1,484.35 | $3,839.79 | $0.00 | $0.00 | $466,256.70 |
| 1/30/2017 | Loan Payment | $5,324.14 | $4,416.66 | $907.48 | $0.00 | $0.00 | $465,349.22 |
| 1/31/2017 | Loan Payment | $5,324.14 | $1,469.36 | $3,854.78 | $0.00 | $0.00 | $461,494.44 |
| 1/31/2017 | Service Fee Charge | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $461,494.44 |
| 2/1/2017 | Loan Payment | $5,324.14 | $1,457.18 | $3,866.96 | $0.00 | $0.00 | $457,627.48 |
| 2/2/2017 | Loan Payment | $5,324.14 | $1,444.97 | $3,879.17 | $0.00 | $0.00 | $453,748.31 |
| 2/3/2017 | Loan Payment | $5,324.14 | $1,432.73 | $3,891.41 | $0.00 | $0.00 | $449,856.90 |
| 2/6/2017 | Loan Payment | $5,324.14 | $4,261.32 | $1,062.82 | $0.00 | $0.00 | $448,794.08 |
| 2/7/2017 | Loan Payment | $5,324.14 | $1,417.08 | $3,907.06 | $0.00 | $0.00 | $444,887.02 |
| 2/8/2017 | Loan Payment | $5,324.14 | $1,404.75 | $3,919.39 | $0.00 | $0.00 | $440,967.63 |
| 2/9/2017 | Loan Payment | $5,324.14 | $1,392.37 | $3,931.77 | $0.00 | $0.00 | $437,035.86 |

ACCOUNT NO: 21727
STATEMENT DATE: 2/12/2018
PAGE NO: 2

LOAN ACTIVITY

| EFFECTIVE DATE | REFERENCE | TOTAL RECEIVED | INTEREST | DISTRIBUTION PRINCIPAL | NSF | OTHER | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 2/10/2017 | Loan Payment | $5,324.14 | $1,379.96 | $3,944.18 | $0.00 | $0.00 | $433,091.68 |
| 2/10/2017 | Service Fee Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $433,091.68 |
| 2/13/2017 | Loan Payment | $5,324.14 | $4,102.51 | $1,221.63 | $0.00 | $0.00 | $431,870.05 |
| 2/14/2017 | Loan Payment | $5,324.14 | $1,363.64 | $3,960.50 | $0.00 | $0.00 | $427,909.55 |
| 2/15/2017 | Loan Payment | $5,324.14 | $1,351.14 | $3,973.00 | $0.00 | $0.00 | $423,936.55 |
| 2/16/2017 | Loan Payment | $5,324.14 | $1,338.59 | $3,985.55 | $0.00 | $0.00 | $419,951.00 |
| 2/17/2017 | Loan Payment | $5,324.14 | $1,326.01 | $3,998.13 | $0.00 | $0.00 | $415,952.87 |
| 2/21/2017 | Loan Payment | $5,324.14 | $5,253.54 | $70.60 | $0.00 | $0.00 | $415,882.27 |
| 2/21/2017 | Loan Payment Revers | ($5,324.14) | ($5,253.54) | ($70.60) | $0.00 | $0.00 | $415,952.87 |
| 2/21/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $415,952.87 |
| 2/22/2017 | Loan Payment | $5,324.14 | $1,313.16 | $4,010.98 | $0.00 | $0.00 | $411,941.89 |
| 2/22/2017 | Loan Payment Revers | ($5,324.14) | ($1,313.16) | ($4,010.98) | $0.00 | $0.00 | $415,952.87 |
| 2/22/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $415,952.87 |
| 2/23/2017 | Loan Payment | $5,324.14 | $1,300.50 | $4,023.64 | $0.00 | $0.00 | $411,929.23 |
| 2/23/2017 | Loan Payment Revers | ($5,324.14) | ($1,300.50) | ($4,023.64) | $0.00 | $0.00 | $415,952.87 |
| 2/23/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $415,952.87 |
| 2/24/2017 | Loan Payment | $5,324.14 | $1,287.79 | $4,036.35 | $0.00 | $0.00 | $411,916.52 |
| 2/24/2017 | Loan Payment Revers | ($5,324.14) | ($1,287.79) | ($4,036.35) | $0.00 | $0.00 | $415,952.87 |
| 2/24/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $415,952.87 |
| 2/27/2017 | Loan Payment | $5,324.14 | $3,889.81 | $1,434.33 | $0.00 | $0.00 | $414,518.54 |
| 2/27/2017 | Loan Payment Revers | ($5,324.14) | ($3,889.81) | ($1,434.33) | $0.00 | $0.00 | $415,952.87 |
| 2/27/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $415,952.87 |
| 2/28/2017 | Loan Payment | $5,324.14 | $1,346.93 | $3,977.21 | $0.00 | $0.00 | $411,975.66 |
| 3/1/2017 | Loan Payment | $5,324.14 | $1,347.28 | $3,976.86 | $0.00 | $0.00 | $407,998.80 |
| 3/2/2017 | Loan Payment | $5,324.14 | $1,297.33 | $4,026.81 | $0.00 | $0.00 | $403,971.99 |
| 3/2/2017 | Loan Payment Revers | ($5,324.14) | ($1,297.33) | ($4,026.81) | $0.00 | $0.00 | $407,998.80 |
| 3/2/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $407,998.80 |
| 3/3/2017 | Loan Payment | $5,324.14 | $1,275.56 | $4,048.58 | $0.00 | $0.00 | $403,950.22 |
| 3/3/2017 | Loan Payment Revers | ($5,324.14) | ($1,275.56) | ($4,048.58) | $0.00 | $0.00 | $407,998.80 |
| 3/3/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $407,998.80 |
| 3/6/2017 | Loan Payment | $5,324.14 | $3,788.32 | $1,535.82 | $0.00 | $0.00 | $406,462.98 |
| 3/7/2017 | Loan Payment | $5,324.14 | $1,321.50 | $4,002.64 | $0.00 | $0.00 | $402,460.34 |
| 3/8/2017 | Loan Payment | $5,324.14 | $1,321.92 | $4,002.22 | $0.00 | $0.00 | $398,458.12 |
| 3/8/2017 | Loan Payment | $5,359.14 | $5,359.14 | | $0.00 | $0.00 | $398,458.12 |
| 3/9/2017 | Loan Payment | $5,324.14 | $1,258.15 | $4,065.99 | $0.00 | $0.00 | $394,392.13 |
| 3/9/2017 | Loan Payment | $5,359.14 | $5,359.14 | | $0.00 | $0.00 | $394,392.13 |
| 3/10/2017 | Loan Payment | $5,324.14 | $1,245.31 | $4,078.83 | $0.00 | $0.00 | $390,313.30 |
| 3/10/2017 | Loan Payment | $5,359.14 | $4,899.41 | $459.73 | $0.00 | $0.00 | $389,853.57 |
| 3/13/2017 | Loan Payment | $5,324.14 | $3,692.93 | $1,631.21 | $0.00 | $0.00 | $388,222.36 |
| 3/14/2017 | Loan Payment | $5,324.14 | $1,225.83 | $4,098.31 | $0.00 | $0.00 | $384,124.05 |
| 3/14/2017 | Loan Payment Revers | ($5,324.14) | ($1,225.83) | ($4,098.31) | $0.00 | $0.00 | $388,222.36 |
| 3/14/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/15/2017 | Loan Payment | $5,324.14 | $1,212.88 | $4,111.26 | $0.00 | $0.00 | $384,111.10 |
| 3/15/2017 | Loan Payment | $5,359.14 | $0.00 | $5,359.14 | $0.00 | $0.00 | $378,751.96 |
| 3/15/2017 | Loan Payment Revers | ($5,324.14) | ($1,212.88) | ($4,111.26) | $0.00 | $0.00 | $382,863.22 |

ACCOUNT NO: 21727
STATEMENT DATE: 2/12/2018
PAGE NO: 3

LOAN ACTIVITY

| EFFECTIVE DATE | REFERENCE | TOTAL RECEIVED | INTEREST | DISTRIBUTION PRINCIPAL | NSF | OTHER | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|---|
| 3/15/2017 | Loan Payment Revers | ($5,359.14) | $0.00 | ($5,359.14) | $0.00 | $0.00 | $388,222.36 |
| 3/15/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/15/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/16/2017 | Loan Payment | $5,324.14 | $1,182.98 | $4,141.16 | $0.00 | $0.00 | $384,081.20 |
| 3/16/2017 | Loan Payment | $5,359.14 | $1,225.83 | $4,133.31 | $0.00 | $0.00 | $379,947.89 |
| 3/16/2017 | Loan Payment Revers | ($5,324.14) | ($1,182.98) | ($4,141.16) | $0.00 | $0.00 | $384,089.05 |
| 3/16/2017 | Loan Payment Revers | ($5,359.14) | ($1,225.83) | ($4,133.31) | $0.00 | $0.00 | $388,222.36 |
| 3/16/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/16/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/17/2017 | Loan Payment | $5,324.14 | $1,195.68 | $4,128.46 | $0.00 | $0.00 | $384,093.90 |
| 3/17/2017 | Loan Payment Revers | ($5,324.14) | ($1,195.68) | ($4,128.46) | $0.00 | $0.00 | $388,222.36 |
| 3/17/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/20/2017 | Loan Payment | $5,324.14 | $3,619.79 | $1,704.35 | $0.00 | $0.00 | $386,518.01 |
| 3/20/2017 | Loan Payment Revers | ($5,324.14) | ($3,619.79) | ($1,704.35) | $0.00 | $0.00 | $388,222.36 |
| 3/20/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/21/2017 | Loan Payment | $5,324.14 | $1,311.91 | $4,012.23 | $0.00 | $0.00 | $384,210.13 |
| 3/21/2017 | Loan Payment Revers | ($5,324.14) | ($1,311.91) | ($4,012.23) | $0.00 | $0.00 | $388,222.36 |
| 3/21/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/22/2017 | Loan Payment | $5,324.14 | $1,194.74 | $4,129.40 | $0.00 | $0.00 | $384,092.96 |
| 3/22/2017 | Loan Payment Revers | ($5,324.14) | ($1,194.74) | ($4,129.40) | $0.00 | $0.00 | $388,222.36 |
| 3/22/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 3/23/2017 | Loan Payment | $5,324.14 | $1,276.06 | $4,048.08 | $0.00 | $0.00 | $384,174.28 |
| 3/23/2017 | Loan Payment Revers | ($5,324.14) | ($1,276.06) | ($4,048.08) | $0.00 | $0.00 | $388,222.36 |
| 3/23/2017 | NSF Fee | ($35.00) | $0.00 | $0.00 | ($35.00) | $0.00 | $388,222.36 |
| 6/30/2017 | New Fee RC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $388,222.36 |
| 6/30/2017 | Collection Fee | ($1,494.50) | $0.00 | $0.00 | $0.00 | ($1,494.50) | $388,222.36 |
| 2/7/2018 | New Fee RC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $388,222.36 |
| 2/7/2018 | Collection Fee | ($8,723.00) | $0.00 | $0.00 | $0.00 | ($8,723.00) | $388,222.36 |
| | | $93,092.96 | ($388,222.36) | | ($595.00) | ($10,217.50) | $388,222.36 |

# EXHIBIT G

17-3827 (H)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASETERN DIVISION

In re:                                    *
                                          *
LANDASH CORPORATION,                      *      Case No.: 18-50300
                                          *      Chapter 7
        Debtor.                           *      Judge C. Kathryn Preston
                                          *

---

### RELIEF FROM STAY / ADEQUATE PROTECTION
### EXHIBIT AND WORKSHEET — REAL ESTATE
### (For use as required by LBR 4001–1(a)(1))

---

Real property address which is the subject of this motion:

885 Sternberger Rd., Jackson, OH 45640

## DEBT / VALUE REPRESENTATIONS:

Total indebtedness of the debtor(s) at the time of filing the motion  for relief from stay (not to be relied upon as a payoff quotation)

$865,607.64

Movant's estimated market value of the real property          $514,990.00

Source of the estimated valuation: Jackson County, OH Auditor

## STATEMENT OF ARREARAGE:

(1) As of petition filing date:

$865,607.64
(Accelerated/ in foreclosure)

Amounts paid after the date of filing to be applied to the prepetition default: $0

(2) Postpetition:

$0

(3) Monthly payment amount:

$159,724.20 (until maturity)

(4) Date of Last Payment:

March 13, 2017

(5) Amount of Last Payment:

$5324.14

\# of payments due postpetition                                    2

\# of payments received postpetition            0

\# of payments in default postpetition          19

Total amount of postpetition payments currently in default:

$865,607.64(matured 7/7/17)

+ Postpetition late charges                                        $See Exhibit F

+ Other charges                                                    $ See Exhibit F


Foreclosure title work          $See Exhibit F

Filing fee                      $See Exhibit F

Skip trace                      $NA

Document acquisition costs  $

Service Process server          $N/A

Escrow Shortage

Hazard Insurance            $_____ Dates:

Taxes                       $_____ Dates:

Appraisal                   $

BPO charges                 $

Property Inspection        $ _____

Other        $ _____

= Total Postpetition Arrearage        $865,607.64

**OTHER LOAN
INFORMATION:**

Date of the Loan        <u>January 5, 2017</u>

Current Interest Rate

<u>.3157534247%/day</u>

Money paid to and held by the mortgagee but not applied to the loan <u>$0</u>: if held in the form of checks, balance of such checks $ <u>NA</u>, and identity of holder of the checks <u>NA</u>.

**REQUIRED ATTACHMENTS TO MOTION:**

(a)  In a Chapter 13 case, a postpetition payment history.

(b)  In all cases, copies of documents which indicate movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the real estate mortgage should be attached. The mortgage should bear date stamps reflecting the recording date together with recording references reflecting the recordation of the mortgage with the appropriate county official. If the subject property is registered land, movant shall attach a copy of the registered land certificate or other documentation reflecting that the mortgage was memorialized as a lien on the registered land certificate.

This Exhibit and Worksheet was prepared by:

<u>/s/ Jeremy R. Mason, Esq.</u>
Jeremy R. Mason (0072389)
Joseph M. Ruwe (0070141)
MASON, SCHILLING & MASON CO., L.P.A.
P.O. Box 498367
5181 Natorp Drive, Suite 202
Cincinnati, Ohio 45249
Telephone (513) 489-0829, Ext.226
Facsimile (513) 489-0834
jeremy@mason-law.com
*Attorneys for WBL SPO 1, LLC*