IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **LUCIEN J. TUJAGUE, JR.** | § <br> § <br> § <br> § |
| **v.** | § <br> § <br> § § CIVIL ACTION NO. 4:18-CV-0631 <br> § <br> § |
| **JASON ELBERT ADKINS** <br> **THE CASTRO FAMILY TRUST, LLC** | § |

# MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY AND APPLICATION FOR WRIT OF ATTACHMENT AND MEMORANDUM IN SUPPORT

Plaintiff files this Motion for Temporary Restraining Order and Memorandum in Support pursuant to Fed. R. Civ. P. 65.

## A.

### INTRODUCTION

Plaintiff is LUCIEN J. TUJAGUE, JR.

Defendants are Jason Elbert Adkins and the Castro Family Trust.

As more fully described in the filings and this Court's previous orders in *Tujague v. Eckerd,* Civil Action No. 4:18-cv-0408, which are referenced and incorporated herein, Plaintiff sued Adkins and Defendant John Eckerd for defrauding him of some $12.9 million in a series of

transactions, and subsequent conveyances in violation of the RICO Act, state statutes, and common law related to theft and fraud. The scheme arose from some forty transactions, and involved other co-conspirators, including Jason Elbert Adkins, and the entities they controlled. As they did with others, Adkins and Eckerd would divert funds wired by Plaintiff to wires to Landash Corporation, and LAD Impex that were for the exclusive purpose of purchasing OTR Tires, back to entities Adkins and Eckerd controlled.[1]

## THE CASTRO FAMILY TRUST

In *Eckerd* and other actions, witnesses have suggested that Adkins was not worried about losing any assets as he had assets "in his wife's name" and "offshore." One witness indicated that Adkins had transferred as much as $12 million abroad.

Eckerd executed a similar plan, diverting money from his family trust, La Mia Bella Famiglia, and from other entities, including Euro Tread Corporation to the Castro Family Trust.[2] As indicated previously, the Castros are the parents of John Eckerd's wife, Lauren Castro Eckerd. According to records, Eckerd and his co-conspirators have transferred at least **$3,081,000**[3] to an account held in the name of **Castro Family Trust at Bank of Texas** since January of this year.

| | | |
|---|---|---|
| Euro Tread Corp. | Mar 20, 2018 | $1,164,000.00 |
| Euro Tread Corp. | May 31, 2018 | $ 917,000.00 |
| Euro Tread Corp. | June 25, 2018 | $1,000,000.00 |

On July 10, this Court granted writs of attachment for Euro Tread and the Castro Family Trust were attached. *Order,* at 3. (SEALED Dkt. #27). Days later, Defendant John Eckerd filed a

---

[1] See Exhibit "A," Affidavit of Lucien Tujague.
[2] See Exhibit "B," Bank of Texas Account for Euro Tread Corp. Acct. ******7002
[3] La Mia Bella Famiglia is believed to have transferred and additional $372,000 to the Trust following its receipt from Euro Tread of such funds on February 21, 2018.

**MOTION FOR TEMPORARY RESTRAINING ORDER,**
**EXPEDITED DISCOVERY, APPLICATION FOR WRIT OF**
**ATTACHMENT AND MEMORANDUM IN SUPPORT**                                Page | 2

bankruptcy, though, that stayed the writs. Plaintiff never ascertained whether Euro Tread, the Castro Family Trust or any of the institutions holding their proceeds complied with this Court's orders.

**During a meeting of his creditors on August 17, 2018, John Eckerd <u>testified</u> that the Castro Family Trust has been lending him some $50,000 a month.** As a result, Plaintiff has compelling reasons to believe that Eckerd and others are dissipating proceeds, violating the Court's previous orders and defrauding the bankruptcy courts and creditors.

### ADKINS AND REBEKAH HOLDINGS, LLC

Adkins does not own his family's principal residence at 885 Sternberger Road, Jackson, Ohio. Rather the residence and the 77-acre tract of land are held in Rebekah Holdings. The residence changed ownership some six times between March 2017 and March 2018.[4] Another Adkins creditor, Joseph Fulda of New York, determined there was a risk of fraud and insisted Adkins transfer the residence to Fulda in a limited liability company he owned, 885 Sternberger Road LLC. Adkins still defaulted and Fulda almost foreclosed, but Adkins paid him off resulting in the return of the residence to Rebekah Holdings.

Defendants further transferred Plaintiff's money into other assets, including Trident Lakes Property Holdings. , and other entities. Plaintiff's money was diverted to assets employed in a money laundering scheme. *See* Criminal Complaint, Cause No. 2:18-mj-03556, *United States of America v. John Eckerd,* U.S. District Court of New Jersey. In addition to the exhibits incorporated from Plaintiff's Original Complaint, affidavits from Plaintiff and private investigator James W. Bogers prove the allegations in the application for a temporary restraining order and injunctive relief are attached and incorporated here by reference. Plaintiff likewise incorporates documents

---

[4] See Exhibit "C," Sales Data for 885 Sternberger Road.

**MOTION FOR TEMPORARY RESTRAINING ORDER,
EXPEDITED DISCOVERY, APPLICATION FOR WRIT OF
ATTACHMENT AND MEMORANDUM IN SUPPORT**                                                      Page | 3

obtained the bankrupted entity, Landash Corporation where Plaintiff had been directed to wire his funds. *See Abington Emerson Capital v. Landash Corporation, et al.,* 2:17-cv-0143, U.S. District Court for the Southern District of Ohio.

## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff urges the Court to restrain Defendants, whether by themselves, or acting through any agent, employee, or co-conspirator, from the following:

a. Transferring, lending or removing any funds from the Castro Family Trust;
b. Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of any of Plaintiff's or Defendants' property;
c. Misrepresenting or refusing to disclose to Plaintiff or to the Court on proper request the existence, amount, or location of any property;
d. Damaging or destroying tangible property of any Defendant;
e. Tampering with the tangible property of any Defendant, including any documents, that represents or embodies anything of value, and/or causing pecuniary loss to Plaintiff;
f. Selling, transferring, assigning, mortgaging, encumbering or in any manner alienating any of Plaintiff's or Defendants' property, whether real or personal, without obtaining the consent of Plaintiff and the Court;
g. Incurring indebtedness except as authorized by the Court;
h. Making withdrawals from any checking or savings account in any financial institution for any purpose except by authorized by the Court;
i. Spending any sum of cash for any purpose except as specifically authorized by the Court;
j. Withdrawing or borrowing in any manner for any purpose from any retirement, profit sharing, pension, disability, employee benefit plan, employee savings plan, individual retirement plan, or Keogh account;
k. Opening any new savings, checking, money market, or stock trading accounts with any bank, brokerage, or financial institution;
l. Purchasing, or otherwise acquiring any interest in real property without obtaining the consent of Plaintiff and the Court;

    m. Purchasing or acquiring any chattel, including OTR Tires, without obtaining consent of Plaintiff and the Court.

    n. Engaging in criminal act in violation of the penal laws of the United States of America and the State of Texas.

Plaintiff further requests that the Court set this matter for further hearing before the expiration of temporary restraining order so that a preliminary injunction may issue.

## EXPEDITED DISCOVERY

To ensure the performance, and compliance with the Court's orders, to protect Plaintiff and the public from past and future fraudulent and criminal conduct, and allow Plaintiff to prepare for the anticipated TEMPORARY INJUNCTION hearing Plaintiff urges the Court to order Defendants to do the following:

> Within **three calendar days** of the Court's order provide the account numbers and the name of all bank institutions of any accounts held by any of the named Defendant **THE CASTRO FAMILY TRUST, LLC**;
>
> THE CASTRO FAMILY TRUST:
> Banking Institution:   Bank of Texas
> Account Number:        *****5029
>
> Within **ten calendar days** of the Court's order, produce copies of all electronic correspondence—including all emails, text messages, instant messages, or social media posts—between (to and from) DONNA CASTRO or DAN CASTRO to or from JOHN KEITH ECKERD of their daughter LAUREN ECKERD from **January 1, 2017 to the present** and the following individuals.

To ensure the performance, and compliance with the Court's orders, and to protect Plaintiff and the public from past and future fraudulent and criminal conduct, Plaintiff seeks consent to issue and serve subpoenas **immediately** on the following banking institutions:

THE CASTRO FAMILY TRUST:

Banking Institution: Bank of Texas

Account Number: ********5029

## WRITS OF ATTACHMENT

### CASTRO FAMILY TRUST ACCOUNT WITH BANK OF TEXAS

Chapter 24 of the Texas Uniform Fraudulent Transfer Act provides parties sweeping remedies to prevent fraudulent transfers. *See* Tex. Bus. & Com. Code. § 24.008. Section 24.008(a)(1) specifically provides that Plaintiff may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy" his claims. Likewise, Section 24.008(2) authorizes the "attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance" with the applicable rules of civil procedure. *See A.T.N. Industries, Inc. v. Gross,* 632 Fed. Appx. 185, 191 (5th Cir. 2015)(employing to TUFTA to freeze funds diverted money to others, including his father in-law in Venezuela). Based on the probability of success and the exigent circumstances of irreparable harm of some $3 million being transferred by Defendant or others, a writ immediately attaching the account held by the <u>Castro Family Trust with Bank of Texas</u> is urgently needed.

### 885 STERNBERGER ROAD, JACKSON OHIO

Defendant Jason Elbert Adkins employed the 77-acres comprising his residence and several outbuilding as his base of operations for countless of his shell companies. Adkins is not listed on the title of the 885 Sternberger Road, Jackson, Ohio. Rather the residence and the tract of land are held in Rebekah Holdings. The residence changed ownership multiple times another Adkins creditor, Joseph Fulda of New York, determined there was a risk of fraud and insisted

Adkins transfer the residence to Fulda.[5] Adkins still defaulted and Fulda almost foreclosed, but Adkins paid him off resulting in the return of the residence to Rebekah Holdings.

## ARGUMENT AND AUTHORITIES

### A.

### TEMPORARY RESTRAINING ORDER AND WRIT OF ATTACHMENT IS ESSENTIAL TO PROTECT PLAINTIFF AND THE PUBLIC

Plaintiff will likely suffer imminent and irreparable harm if property and accounts are not attached and Defendants are not immediately restrained from the acts specified and required to perform the acts specified to preserve assets and documents. Fed. R. Civ. P. 65(b)(1).; *Fairchild Semiconductor Corp. v. Third Dimension (3D) Seminconductor, Inc.,* 564 F.Supp. 2d 63, 66-68 (D. Me. 2008); *Nw. Airlines, Inc. v. Bauer,* 467 F. Supp. 2d 957, 963-64 (D.N.D. 2006); *see Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008).

There is no adequate remedy at law. *Prudential Ins. Co. of Am. v. Inlay,* 728 F. Supp. 2d 1022, 1030-31 (N.D. Iowa 2010); *see Ruggieri v. M.I.W. Corp.,* 826 F. Supp. 2d 334, 336 (D. Mass. 2011). Legal remedies against these Defendants will be illusory as Eckerd and his co-conspirator Adkins have operated through a wide-ranging web of sham entities.[6] They have purposely abused the corporate form to engage in an ongoing criminal enterprise that includes wire fraud, Ponzi schemes, and bank fraud. Likewise, they have abused the bankruptcy courts, and vexed and evaded a number of other creditors in other litigation across the country. Defendant Eckerd, in particular, has already been shown to have employed real property to launder money believed to be the product of Colombian narcotic trafficking.

---

[5] Exhibit "C".
[6] Exhibit "D," Affidavit of James W. Bogers; see also Exhibit "E," Affidavit of Patrick Davis.

**MOTION FOR TEMPORARY RESTRAINING ORDER,
EXPEDITED DISCOVERY, APPLICATION FOR WRIT OF
ATTACHMENT AND MEMORANDUM IN SUPPORT**                                         Page | 7

As his criminal case may be resolved in July 2018, too, it is incumbent that Plaintiff, and the judiciary better understand precisely where all of Plaintiff's money went, as it is likely there are even more criminal offenses committed by Eckerd. Finally, given that Defendant Eckerd had to forfeit one of his $2 million residences to pay a $100,000 bond for his conditional release, he is grotesquely undercapitalized for the liability of this action. Plaintiff has been defrauded of $12.9 million, without even considering the losses from the profits that were represented to him by Adkins and Eckerd and others. Given the RICO Act's prescription for treble damages in instances, like the present, Defendant Eckerd and his alter ego entities face close to $40 million in exposure for Plaintiff's claims alone, even before attorneys' fees. To prevent the waste of private and public resources, equitable relief is required.

Rule 65 of the Federal Rules of Civil Procedure provides that a district court:

may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). In order to obtain injunctive relief, including a temporary restraining order, a plaintiff must establish that (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunctive relief would cause the defendant; and (4) the granting of the injunction is not adverse to

the public interest. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009)(quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

There is a substantial likelihood that Plaintiff will prevail on the merits. *Prudential, infra.* Defendants to date have established that Plaintiff wired more than $12.9 million and has learned that some or all were complete fabrications. Likewise, Defendant faces multiple actions elsewhere for the same or similar schemes perpetrated on Plaintiff.[7] He likewise closed on significant real estate purchases for his own benefit and the benefit of his controlled entities contemporaneous with the series fraudulent wire transfers. His partner in crime has already invoked his Fifth Amendment privilege with respect to the bankruptcy of himself—which grew from the bankruptcy of the Landash Corporation bankruptcy where Plaintiff wired all sums. Each of these in a vacuum shows the substantial likelihood of Plaintiff's recovery. But when you couple these events with Defendant's arrest and present plea bargaining for employing his real property for money laundering, it is a moral certainty that Plaintiff will prevail.

As specified in detail, the harm will be irreparable. Without the Court's present assistance, Plaintiff not be able to timely identify, much less restrain, the transfer, of the accounts, and real property where Eckerd and his agents or subordinates have diverted Plaintiff's money.

The harm threatened to Plaintiff vastly outweighs *any* damage Defendant may face. He has already embarked on a lavish criminal spree involving funds from Plaintiff and other defrauded investors and creditors. He has already attempted to pollute one or more of his real estate

---

[7]*Case Pro-logistics Forwarding LTD. v. Robison Tire Co., Inc.* Civil Action No. 2:13-CV-83, U.S. District Court, Southern District of Mississippi—Hattiesburg Division. *Overland Ventures, LLC et al. v. Giant Tyres USA, LLC et al.,* Civil Action No. 2:14-CV-31, U.S. District Court, Southern District of Mississippi—Eastern Division. *Star Funding v. Vault Minerals, et al.*, Civil Action No. 1:15-CV-3026, U.S. District Court, Southern District of New York (Foley Square). *Kirby Developments LLC v. XPO Global Forwarding, Inc. et al,* Civil Action No. 2:18-CV-0500.

**MOTION FOR TEMPORARY RESTRAINING ORDER,**
**EXPEDITED DISCOVERY, APPLICATION FOR WRIT OF**
**ATTACHMENT AND MEMORANDUM IN SUPPORT** Page | 9

developments with a base money laundering scheme. In short, Defendant has nothing legitimate to jeopardize.

Granting injunctive relief will greatly advance the public interest. Besides attempting to launder money through the widely publicized real estate venture, he and Adkins have spawned a number of lawsuits, and stolen tens of millions of dollars from creditors and investors.

Furthermore, Plaintiff is able and willing to put up a reasonable bond but would suggest that writs issue immediately without further action as he has already posted bond in the related action presently stayed in *Tujague v. Eckerd,* Civil Action No. 4:18-CV-0408.

**B.**

**EXPEDITED DISCOVERY IS ESSENTIAL TO PROTECTING**

**PLAINTIFF AND THE PUBLIC**

Rule 26 of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), *except* ... when authorized by these rules, by stipulation, or ***by court order***." Fed. R. Civ. P. 26(d)(emphasis added); see also Fed. R. Civ. P. 34(b)(2)(A) (providing that shorter response times to discovery requests "may be ordered by the court").

Although the Federal Rules do not provide a standard for the Court to use in exercising its authority to order expedited discovery, courts generally use one of the following two standards to determine whether a party is entitled to conduct expedited discovery: (1) a "preliminary-injunction-style analysis," or (2) a "good cause standard." *Stockade Cos., LLC & Stockade Franchising, LP v. Kelly Rest. Group*, LLC, 1:17-CV-143-RP, 2017 WL 2635285, at *2 (W.D. Tex. June 19, 2017) (quoting *Greenthal v. Joyce*, 4:16-CV-41, 2016 WL 362312, at *1 (S.D. Tex. Jan. 29, 2016)). While the Fifth Circuit has not explicitly adopted a standard to determine whether

a party is entitled to expedited discovery, the majority of courts in this Circuit have adopted the "good cause" standard. See, *e.g., Stockade*, 2017 WL 2635285, at *2; *Greenthal*, 2016 WL 362312, at *1; United Biologics, LLC v. Am. Acad. of Allergy, SA-14-CV-35-OLG, 2014 WL 12637937, at *2 (W.D. Tex. Mar. 20, 2014); *ELargo Holdings, LLC v. Doe*-68.105.146.38, 318 F.R.D. 58, 61 (M.D. La. 2016).

Under the "good cause" standard for expedited discovery, "courts often consider '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Stockade*, 2017 WL 2635285, at *2 (quoting *Greenthal*, 2016 WL 362312, at *1). The party seeking expedited discovery bears the burden of showing good cause, and the subject matter of the expedited discovery requests should be narrowly tailored in scope. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, Inc., 275 F.R.D. 236, 240 (S.D. Tex. 2011); *Stockade*, 2017 WL 2635285, at *2

Here, good cause exists as Plaintiff has amply demonstrated the essential need to prevent imminent irreparable harm by Defendant John Eckerd's criminal conduct, including money laundering, wire fraud, and fraudulent conveyances, and rampant abuse of the corporate form. His co-conspirator, Jason Adkins, has stated that he had all of his assets in his wife's name, and "$12 million overseas." Moreover, Adkins has already filed two bankruptcies, one of which the trustee for the Southern District of Ohio determined on June 1, 2018—less than two weeks ago—that he has defaulted. *See* Adv. Proc. Case No. 18-02043, *U.S. Trustee v. Jason E. Adkins*, U.S. Bankruptcy Court for the Southern District of Ohio—Eastern Division at Columbus, and *In re: Jason E. Adkins,* Case No. 18-50671. In determining the default, the trustee noted that Adkins

**MOTION FOR TEMPORARY RESTRAINING ORDER,**
**EXPEDITED DISCOVERY, APPLICATION FOR WRIT OF**
**ATTACHMENT AND MEMORANDUM IN SUPPORT**　　　　　　　　　　　　　　　　　Page | 11

refused to provide any "substantive information" or any "substantive disclosures and information" in the filed schedules and statement of financial affairs. More to the point, Adkins invoked his Fifth Amendment right against self-incrimination. *Id., Motion for Default* (ECF Doc. 4)

As indicated in the Original Complaint, and related exhibits, Defendant Eckerd has already been charged with laundering money with respect to the Trident Lakes development. His solvency, and the location of assets is of acute concern when you consider the gravamen of the conduct that the FBI's sworn complaint establishes. Eckerd and another party accepted combined payments of approximately $200,000 on multiple occasions wherein he would make only an approximately 10 percent commission and jeopardize a real estate development touted publicly to cost more than $320 million. Defendant Eckerd's was arrest prompted by his participation in a scheme to launder money he believed to be from a Columbian drug cartel through his Trident Lakes development, which had been purchased during the time Plaintiff had wired millions to Adkins and the entity he and Eckerd controlled, Landash Corporation.

The court's vast equitable powers are immediately necessary to reign in Defendant's almost baroque criminality.

Second, the breadth of the discovery in this instance is narrowly tailored to protect Plaintiff, and other parties from the waste, transfer and destruction of assets. Likewise, the requested discovery includes items that can be readily destroyed. Plaintiff has requested only four categories of information, which tightly focus on where the money has gone, and aims to stop it from further disappearance.

Third, the purpose for requesting the expedited discovery is to protect Plaintiff by identifying where Defendant has transferred Plaintiff's moneys and where they can be acquired. Defendant and co-conspirator Adkins have operated through a large number of different entities

in complete disregard of the corporate form. Only by obtaining the evidence of the bank accounts will Plaintiff have any hope of *finding* much less *persevering* Defendant's ill-gotten gains. This is the essential function of the Court's equitable power: to prevent a multiplicity of illusory lawsuits. The requests also relate to the communications of the small number of people suspected of aiding and abetting Defendant in these conspiracies. While the alleged bankrupt Jason Adkins is near the top of the conspiracy, each of the others appear to have committed acts in every fabricated transaction resulting in Plaintiff's multimillion dollar losses.

These requests are by no means burdensome. Banking records are available online from virtually all banks. Plaintiff likewise has sought only a narrow period of time.

The present request is being made only weeks before it would be traditionally requested—a relatively short time in light of the extraordinary acts of Defendant. Likewise, Plaintiff has suggested that additional time be allowed for those items that will take longer to produce. Even though there are exigent circumstances, for example, that Defendant Eckerd could delete communications to or from any of the individuals identified, Plaintiff's allotted time is tailored to lessen any burden Defendant Eckerd may assert in responding.

## CONCLUSION

Before the court is but a brief description of wide web of fraud. Plaintiff does not seek to waste the Court's time to obtain a massive fruitless judgment. Rather, he seeks relief from his tremendous losses, and to punish wrongdoing. His efforts will be in vain, if he cannot move with dispatch. Plaintiff thus urges that the Court **GRANT** the Temporary Restraining Order, Order for Expedited Discovery and Writs of Attachment as requested and set this matter down for further hearing for a preliminary injunction in accordance with the law and requested restraining order.[8]

---

[8] See Exhibit "E," Proposed Order.

Respectfully submitted,

**HENLEY & HENLEY, P.C.**

By: /s/ Geoff J. Henley
Geoff J. Henley
State Bar No. 00798253
2520 Fairmount, Suite 200
Dallas, Texas 75201
Telephone Number: (214) 821-0222
Facsimile Number: (214) 821-0124

**ATTORNEYS FOR PLAINTIFF
LUCIEN J. TAJAGUE, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2018, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the CM/EFC system which will send notification to all attorneys of record who are registered for electronic notice.

/s/ Geoff J. Henley
Geoff J. Henley

## RULE 65(B) CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 65(B), I certify and affirm that I have not communicated with Defendants. In light of the exigent circumstances as specified in the extant filings, and the criminal conduct involved, *ex parte* relief is necessary as the evidence to date has established that Adkins, Eckerd and their co-conspirators have transferred and concealed assets through a number of different schemes.

/s/ Geoff J. Henley
Geoff J. Henley